LOUISIANA & NORTHWEST RAILROAD COMPANY v. J. P.

MACHEN & COMPANY.

Opinion delivered May 23, 1927.

1.  CARRIERS—DELIVERY—QUESTION FOR JURY.—In an action against a connecting carrier for failure to deliver goods, the issue whether the carrier in fact delivered the goods in controversy to the consignee's agents held for the jury, where the testimony was conflicting.

2.  CARRIERS—LIABILITY OF CONNECTING CARRIER FOR NON-DELIVERY.— Where a consignee proved by a preponderance of the evidence that the goods in controversy were delivered to a connecting carrier, he was entitled to a recovery, if the carrier failed to make delivery.

3.  CARRIERS—INSTRUCTION.—In an action against a carrier for non-delivery of a shipment of goods contained in a case bearing definite numbers, an instruction referring to the "goods in controversy" held not erroneous as misleading.

4. CARRIERS—INSTRUCTION AS TO EFFECT OF RECEIPTED FREIGHT BILL.
   —In an action against a carrier for non-delivery of goods, an
   instruction that a receipted freight bill was only *prima facie* evi-
   dence of delivery, and that the jury might nevertheless find for
   plaintiff if the goods were not delivered, *held* erroneous.

5. TRIAL—CONSTRUCTION OF INSTRUCTIONS AS A WHOLE.—Instructions
   prayed for by the appellee and granted must be considered in con-
   nection with instructions granted in behalf of appellant to deter-
   mine whether the case was correctly submitted.

6. EVIDENCE—ADMISSIONS OF AGENT.—In an action against a carrier
   for non-delivery of goods, statements of the station agent that the
   goods had not been received and were not delivered, *held* admis-
   sible as statements made within the line of the agent's duty, with-
   out proof of agent's control over receipt and delivery of freight.

Appeal from Columbia Circuit Court; *L. S. Britt,*
Judge; affirmed.

*Henry Stevens,* for appellant.

*McKay & Smith,* for appellee.

WOOD, J.   This is an action by the appellee against
the appellant to recover damages for the alleged loss of a
case of cotton fabrics consisting of M. F. C. gingham of
the value of $498.22.   The appellee alleged that on the
24th of June, 1920, Marshall Field & Company delivered
to the Danville & Western Railway Company at Spray,
N. C., to be shipped to the plaintiff at Magnolia, Arkan-
sas, the case of fabrics mentioned, and that the Dan-
ville & Western Railway Company, through its connecting
lines, delivered the same to the appellant at Chestnut,
Louisiana, to be shipped to the appellee at Magnolia,
Arkansas; that the appellant had failed to deliver the
same to the appellee, to its damage in the sum above
stated, for which the appellee prayed judgment.

The appellant, in its answer, among other things
admitted that the said shipment and case of goods was
received by defendants, and alleged that same was
promptly delivered to plaintiff at Magnolia, Arkansas.

The testimony establishes the following facts:   On
the order of the appellee there was shipped from Marshall
Field & Company, on June 23, 1920, from Spray, N. C., a
case of cotton fabrics alleged to contain M. F. C. gingham

of the value of $498.22, over the Danville & Western Railroad, the initial carrier, and over the appellant, the delivering carrier. The package or case was numbered 198,139. The case was covered by waybill numbered 2041, dated June 24, 1920, showing shipment from Spray, N. C., to Chestnut, where it was received by the agent of the connecting carrier and by him delivered at that point to the appellant, and from there to Magnolia, Arkansas, under waybill numbered 178, dated July 28, 1920. The last waybill covered the waybill No. 2041, dated June 24, 1920, from Spray, N. C. On August 6, 1920, a case numbered 198,139, covered by waybill No. 178, was delivered by the appellant's agent at Magnolia, Arkansas, to George W. Monroe, drayman and agent of the appellee.

Witness J. V. Orrell testified, in substance, that he was the overseer of the packing and shipping department of the Carolina Cotton & Woolen Mills at Spray, N. C., and shipping agent of Marshall Field & Company; that case No. 198,139 was packed on May 14, 1920, containing 30 pieces of M. F. C. gingham of the value of $498.22; that this case was delivered to Danville & Western Railway Company about June 24, 1920, for shipment to the appellee at Magnolia, Arkansas. It was further shown that the M. F. C. gingham was packed in a wooden box numbered 198,139; that the box was constructed of tongue-and-groove plank, 5/8 of an inch thick, securely nailed together and wrapped with wire at both ends. It was shown by the shipping clerk and the billing clerk of the Carolina Cotton & Woolen Mills at Spray, N. C., that they did not receive any information from the appellee of a failure to receive the case of gingham packed and shipped as indicated. It was shown that the initial carrier received written notice on November 13, 1920, that "one case of M. F. C. gingham numbered 198,139, consigned to the appellee, had not been delivered."

J. P. Machen testified, in substance, over the objection of the appellant, that his company never received the goods; that he notified appellant's local agent of the matter, and the agent stated that the shipment had not

arrived, and that he had traced the same, but could not find it, and that the goods had never been delivered. Witness stated that Mooney made an affidavit to this effect, which he forwarded to Marshall Field & Company's claim department. He was present when the affidavit was signed, and the station agent stated in his presence that the shipment had never reached the railroad station at Magnolia, and that the shipment had never been delivered to G. W. Monroe, the drayman and agent of the appellee. He stated that, if the case No. 198,139, involved in this suit, contained M. F. C. gingham, the Machen Company did not receive it. It received no goods which it did not have an invoice to cover.

W. R. Walker, another member of the firm of Machen & Company, testified to the same effect. He also stated, without objection, that the local agent told him that the case in controversy had never arrived at Magnolia, and that the goods had never been delivered. Another witness, who was an employee of Machen & Company at the time, stated that the M. F. C. gingham had never been delivered.

The cashier of the appellant testified to the effect that the appellant's records showed that the waybill No. 178 was received at Magnolia on the 31st of July, 1920; that G. W. Monroe called for the freight of appellee, and that on the 6th or 8th of August, 1920, he delivered to Monroe the three pieces of freight called for by the waybill No. 178 and collected the freight on the shipment and gave Monroe the expense bill covered by the waybill, and that Monroe signed the receipt for the goods, took the freight, and paid the freight bill from Spray, N. C., to Magnolia, Arkansas. On cross-examination he stated that all he knew about the matter was what his records showed, and that these records were correct. He did not deliver the goods. The warehouseman did that. He did not know whether the goods were delivered to Monroe or not. He only knew that Monroe paid him the money and got the receipts. Witness could not tes-

tify that the goods arrived at the station. He did not check them in or see them checked—he could not swear that the three pieces came in, and did not know that either one of them was numbered 198,139.

The court, at the instance of the appellee, instructed the jury, in effect, that the burden was on the appellee to prove that the goods in controversy had been delivered to the appellant by its connecting carrier, and that their verdict should be in favor of the appellee unless the appellant delivered the property to the appellee. Also there were instructions to the effect that a receipted freight bill was only *prima facie* evidence of the delivery of the freight, and that, notwithstanding this receipted freight bill for the goods in controversy, they should find for the appellee if the appellant failed to deliver the goods to the appellee or its agent.

At the instance of the appellant the court, in effect, told the jury that, if they found from a preponderance of the evidence that the appellant delivered a case of goods No. 198,139 at Magnolia, Arkansas, to G. W. Monroe, drayman for Machen & Company, their verdict should be for the appellant, although the case did not contain the goods covered by the invoice of Marshall Field & Company.

The court further instructed the jury that, before the appellee could recover in the case, it must prove by a preponderance of the evidence that the gingham described in the complaint was shipped as alleged, and that the value of the shipment was $498.22, and that it was received by the appellant, and that appellant failed to deliver the gingham to the appellee.

The jury returned a verdict in favor of the appellee, and from a judgment in appellee's favor is this appeal.

1. There was testimony from which the jury might have found that a case numbered 198,139, containing 30 pieces of M. F. C. gingham, was delivered to the initial carrier at Spray, N. C., and, through the connecting

carrier, was delivered to the appellant for shipment to the appellee at Magnolia, Arkansas. In fact, the appellant admitted that the case of cotton goods alleged was received by it for shipment to the appellee. The appellant contends, however, that the undisputed testimony shows that this same case was delivered by it to Monroe, the drayman, the consignee's agent, at Magnolia, Arkansas. The material testimony on this disputed issue of fact is set forth above, and it speaks for itself. It was an issue of fact for the jury, under the evidence, as to whether or not the appellant delivered the case of goods in controversy at Magnolia to the appellee's agent, Monroe. The appellant contends that the undisputed testimony shows that the case of goods in controversy was delivered to the appellee's agent, Monroe.

Appellant's cashier, on his direct examination, testified that his records, which he kept and which were correct, showed that he delivered to Monroe the three pieces of freight covered by waybill No. 178, which includes the case in controversy, on August 6 or 8, 1920; that he paid the freight thereon and signed the receipts for the goods. On cross-examination, however, the witness stated, among other things, that he could not remember if it were not for the figures on his record. He did not remember a thing on earth about the goods. His records showed that Monroe got three cases of something, but witness did not know what they were and did not remember that one of them was case No. 198,139. That his records did not show that case No. 198,139 was delivered to Machen & Company, and, so far as he was concerned, he knew nothing about it except as shown by the records. On cross-examination he stated that he did not deliver anything but the expense bill; that he did not deliver the goods; that that was the duty of the warehouseman, and witness did not know whether they were delivered to Monroe or not. He stated that he did not know whether Monroe got the goods or not, or what he did with them. Witness only knew that he got the money and the receipt.

He could not swear that the three pieces came into the station. He did not see them checked in there. Witness did not check them himself and did not see them checked in. He was only testifying from the records.

On the other hand, the members of the firm of the appellee and one of its employees who was working for it at the time stated that the goods in controversy were not received. Two of these witnesses stated that the station agent told them, on several occasions, that the goods had never arrived in Magnolia. While appellant's cashier testified that his records showed that the goods were delivered to appellee's agent, Monroe, and that these records were correct, his testimony further showed that he did not know whether the goods were actually delivered to Monroe or not, and that it was the duty of the warehouseman of appellant to deliver the goods. The warehouseman of the appellant was not introduced.

The issue as to whether the case numbered 198,139 was delivered to appellee's agent, Monroe, was submitted to the jury under correct instructions. Appellant contends that the words "goods in controversy" used in appellee's prayers for instructions were misleading. But only a general objection was made to the instructions, and it occurs to us that this particular phraseology could not have misled the jury, because the testimony shows that the goods in controversy were designated by a case bearing the number 198,139. If this box, so designated, was delivered to the appellee or appellee's agent, then appellant was not liable, but, on the other hand, if a box bearing this number was not delivered to the appellee or its agent, the appellant was liable.

The appellant further contends that the appellee's prayers for instruction Nos. 2 and 3 were incorrect because they were abstract in telling the jury, in effect, that, notwithstanding they might find that the plaintiff or plaintiff's agent receipted a freight bill showing delivery of the goods in controversy, the jury nevertheless might find for the appellee if they further found that the

appellant did not deliver the case of goods in controversy. These instructions, in effect, but told the jury that the receipted freight bill was *prima facie* evidence that the case of goods in controversy had been delivered to the appellee, and that it was the province of the jury, notwithstanding the receipted freight bill, to determine whether or not the goods in controversy had actually been delivered to the appellee or to its agent. In other words, the issue at last was whether or not the case of goods in controversy had been delivered to the appellee or to its agent, and, in determining this issue, the jury should take into consideration the receipted freight bill in connection with the other testimony in the record bearing on that issue.

When these instructions are considered, as they must be, in connection with appellant's prayers for instructions which were granted, we are convinced that the issues of fact in the case were submitted to the jury under correct instructions.

2. The appellant contends that the court erred in permitting the witness Machen to testify that Mooney, the station agent of the appellant at Magnolia, Arkansas, said, and made affidavit, in the presence of Machen, that the shipment in controversy had never reached the appellant's station at Magnolia, and that the goods were not delivered to the appellee or its agent. The reason urged for the objection to the admission of this testimony is that there was no evidence in the record to show that a station agent had any control over the matter of receiving or delivering freight, and that, in the absence of testimony showing that he had such authority, his statement and declaration to Machen was inadmissible.

In *Daniel* v. *Doyle,* 135 Ark. 547-550, 204 S. W. 210, 211, we said:

"In its broad sense and in its common signification, a station is a place at which both freight and passengers are received for transportation or are delivered after transportation, and includes a flag station." See also *St. L. etc., Ry. Co.* v. *Neal,* 66 Ark. 543, 51 S. W. 1060.

Since Mooney was the station agent at the town of Magnolia, it was within the scope of his employment and authority to receive and deliver freight. "It has been held that a shipper may assume, in the absence of anything to the contrary, that a railroad station agent has authority to contract with reference to the acceptance and carriage of freight." 4 Elliott on Railroads, p. 482, § 2118, and numerous cases cited in note.

Wood, in his work on Railroads, says:

"Indeed, from necessity, and from the usual course of business, these agents must, in the absence of notice to the public of any special limitations upon their authority, be treated as the representatives of the corporation at their respective stations, with full authority to bind it by general or special contracts relative to the transportation of freights over the road. Being authorized to receive, receipt for, and bill goods for shipment, the public has a right to presume that they have authority to bind the corporation by contracts relating thereto." I Wood on Railroads, page 506.

The statements made by the station agent, Mooney, to Machen, to which the appellant objected, were strictly within the line of his duty and the scope of his authority, and the court did not err in admitting the testimony as to these statements. I Elliott on Railroads, § 254.

There is no reversible error, and the judgment is therefore affirmed.